**John DOE, Appellant**

v.

**NEW JERSEY DEPARTMENT OF CORRECTIONS; Mr. Thomas Farrell, Director of Medical Services for the New jersey Department of Correc-**tions; **Correctional Medical Services; Dr. George Achebe, Medical Supervisor (CMS); Dr. Raymundo Tagle (CMS); St. Francis Medical Center; Susan Farber, Records Administrator, Saint Francis Medical Center; Ultrasound Services, Inc.; Richard Purse, Ultra Sound Services, Inc.**

No. 07–3189.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 7, 2009.

Opinion filed July 8, 2009.

222

Jerald D. Albrecht, Trenton, NJ, pro se.

Kerri E. Chewning, Esq., Archer & Greiner, Haddonfield, NJ, Richard G. Tuttle, Esq., Archer & Greiner, Philadelphia, PA, James R. Birchmeier, Esq., Powell, Birchmeier & Powell, Tuckahoe, NJ, for Appellee.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

In May 2003, John Doe, an inmate at New Jersey State Prison ("NJSP"), brought suit against, *inter alia*, Correctional Medical Services ("CMS"), a private company contracted by the New Jersey Department of Corrections ("NJDOC") to supply medical care to prison facilities. Doe also named two of CMS's independent contractor physicians, Dr. George Achebe and Dr. Raymundo Tagle, in the suit. Dr. Achebe was the medical director of NJSP, and Dr. Tagle was Doe's primary care physician and the associate medical director of NJSP. Thomas Farrell, the supervisor of the NJDOC's health services unit, was also named.

Doe brought several state and federal claims arising out of his treatment for the Hepatitis C Virus ("HCV"). These claims included: (1) denial of medical care in violation of the Eighth Amendment, and arbitrary discrimination and denial of equal protection in violation of the Fourteenth Amendment, as against defendants Farrell and the NJDOC; (2) deliberate indifference to serious medical needs in violation of the Eighth Amendment, violation of, among other things, the Fourteenth Amendment right to due process, and breach of professional duty and contractual obligation to provide medical care, as against defendants CMS and Drs. Achebe and Tagle; and (3) withholding of critical medical information and records and delay of HCV treatment, and breach of duty under the New Jersey Patients Bill of Rights, as against defendants Susan Farber, Richard Purse, Ultrasound Systems, Inc., and St. Francis Medical Center. The District Court dismissed all claims except for Doe's constitutional claim under § 1983 for deliberate indifference. This claim proceeded to trial, which resulted in a jury verdict for the defendants. The District Court denied Doe's subsequent motion for a new trial. Doe now appeals, challenging several adverse evidentiary and jury-instruction rulings and the dismissal of his state-law claims. For the following reasons, we affirm the denial of Doe's motion for a new trial and pretrial rulings, but remand the case to the District Court for clarification on its dismissal of Doe's state medical negligence claim.

### I.

Because we write solely for the parties, we state only the facts relevant to our analysis. Doe entered NJSP in 1999. On his arrival, he informed officials that he previously had tested positive for HCV and asked about testing and treatment.[1]

---

1. HCV is a liver disease with a very long latency period, normally taking 30 to 40 years

A blood test showed Doe was positive for HCV and warranted treatment, but the results were not reported to Doe or entered on his medical chart. A notation was later made on Doe's chart by Dr. Tagle that HCV was "not detected" in Doe's blood. A second notation was made by Dr. Achebe that Doe had declined treatment and was prescribed follow-up in the chronic care clinic, even though Doe had not completed a refusal form. After Dr. Achebe entered his notation, all of Doe's treatment, including chronic care measures, terminated.

After reading various articles about the failure of CMS and the NJDOC to test and treat prisoners for HCV, Doe asked an attorney to help him obtain his medical records. When Doe eventually gained access to his records, showing the undisclosed blood test results and erroneous "not detected" notation, he wrote to Farrell, who referred the matter to CMS without reviewing Doe's charts or referring him to a new physician. CMS, through Dr. Achebe, then sent Doe to a specialist who confirmed that Doe qualified for treatment. Treatment then began, three and a half years after Doe first advised officials of his HCV-positive status. Dr. Tagle prescribed Doe the FDA-approved dose (800 mg) of the drug ribovirin.[2] After 12 weeks of receiving medication, Doe's treatment was terminated because his viral load had not been significantly reduced.

Doe subsequently filed a *pro se* complaint in the District Court, alleging the claims noted above. The District Court reviewed the complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, which requires a court to dismiss *sua sponte* any complaint that fails to state a claim on which relief may be granted when a prisoner brings a civil action *in forma pauperis*. The Court ruled Doe's Eighth Amendment claims against CMS, Drs. Achebe and Tagle, and Farrell were viable and could proceed to trial. (The Court also allowed the state-law claim against defendants Farber, Purse, Ultrasound Systems, Inc., and St. Francis Medical Center to proceed, though it was voluntarily withdrawn by Doe prior to trial.) In its ruling, the District Court made no mention of Doe's state-law medical negligence claim.

The District Court made several evidentiary rulings adverse to Doe during two pretrial hearings and at trial. Shortly before the trial, the Court informed the parties that only the federal denial of medical treatment claim could go to trial. Doe responded with a motion for reconsideration to reinstate his state-law negligence claim against CMS and Drs. Achebe and Tagle. The District Court's order denying the motion stated this claim had been dismissed earlier in the case, at the § 1915 stage, and that the Court had taken into consideration all of Doe's arguments prior

to reach its end-stage. The disease is primarily asymptomatic when individuals are first infected, resulting in 60–85% of those infected developing chronic infection. In 2002, the drug therapy success rate for Doe's form of HCV was approximately 40% after 48 weeks of therapy. Because of the high failure rate, treatment stops after 12 weeks if the patient does not begin to respond favorably. Whether a patient should receive HCV treatment depends on the magnitude of viral load reflected in a blood test. *See* THE NATIONAL INSTITUTES OF HEALTH CONSENSUS DEVELOPMENT PROGRAM MANAGEMENT OF HEPATITIS C (2002), U.S. Department of Health & Human Services, http://consensus.nih.gov/2002Hepatitisc 200216html.htm.

2. The Federal Bureau of Prisons' dosage chart recommends a dose of 1200 mg. The specialist who treated Doe (but did not have final authority on dosage) testified that he would have prescribed 1200 mg, while defendants' expert testified that 800 mg was an acceptable dosage.

**224**

to its ruling that only the Eighth Amendment claim could proceed.

Doe represented himself at trial, which lasted seven days. Following a jury-charge conference, the Court chose not to include several of Doe's requested charges. The jury found in favor of the defendants. Doe brought a motion for a new trial that was denied by the Court, and he now appeals.[3]

## II.

We apply an abuse-of-discretion standard when reviewing a District Court's ruling on admission or exclusion of evidence, *see Gordon v. Lewistown Hosp.*, 423 F.3d 184, 215 n. 21 (3d Cir.2005) (citing *Affiliated Manufacturers, Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525–26 (3d Cir.1995)), and expert testimony, *see Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320 (3d Cir.2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)), as well as to its decision regarding jury instructions. *See United States v. Leahy*, 445 F.3d 634, 642 (3d Cir.2006) (citing *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir.1995)). Dismissal of state-law claims is subject to *de novo* review. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 579 (3d Cir.2003) (citing *Island Insteel Sys. Inc. v. Waters*, 296 F.3d 200, 206 (3d Cir.2002)).

## III.

Doe challenges (1) the exclusion of evidence pertaining to CMS policy, (2) the jury charge, (3) the District Court's failure to investigate attorney misconduct, (4) a limitation on the testimony of his expert,

and (5) the refusal to permit his state malpractice claims to go to trial.

### A.

■ Doe attempted to present evidence at trial that CMS and the NJDOC had a *de facto* policy of not treating prisoners for HCV. To bring a claim against Dr. Achebe, Dr. Tagle, or Farrell's employers, CMS and NJDOC, Doe was required to show both that the employees violated his constitutional rights, and that they did so acting pursuant to a *de facto* policy of their employers. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 585 (3d Cir. 2003). A court has "wide discretion to admit or exclude evidence under the provisions of the Federal Rules of Evidence." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir.1983).

The District Court excluded the testimony of Gary Campbell, a former CMS employee and regional medical director whom Doe alleged developed a policy in 1999 that discouraged CMS physicians from testing prisoners for HCV until they had moderate to severe liver disease. The Court concluded that the testimony was irrelevant, as Campbell had worked in CMS's regional office in St. Louis and the policy he allegedly put in place was not for the State of New Jersey. The Court also found that this policy could not have caused Doe's delayed treatment because, at the time the policy memo was issued, Doe was already aware of his HCV-positive status.

The District Court also excluded several documents Doe attempted to enter into evidence. The first, a report published by the New Jersey Office of Legislative Services, showed that CMS submitted a bid to

---

**3.** The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under § 1291.

NJDOC in 2002 that omitted testing and treatment for HCV. Doe sought to present the report to show that CMS did not want to pay to test and treat HCV. However, the Court found that evidence of cost saving would not show an aversion to testing for or treating HCV, as an interest in "economic gain" is a "universal motive" at a for-profit company such as CMS.

The second document excluded, an HCV Identification Audit issued by Farrell, showed CMS failed to notify over 440 prisoners of their HCV positive test results. Doe attempted to present this as evidence of a systematic practice by CMS physicians to withhold test results from prisoners, but the Court excluded the document because it found an audit regarding testing for HCV was irrelevant to Doe's claim since he "self reported" his condition.

The third excluded document, a Bureau of Justice Statistics Report, contained a survey showing that nearly 50% of prisoners tested in New Jersey between July 1999 and June 2000 were positive for HCV. Doe wanted to present this to establish a custom or policy of Farrell—who Doe alleged was a "policymaker"—and the NJDOC regarding HCV. But this report was excluded because the District Court determined its results were not readily capable of accurate and ready determination. See Fed.R.Evid. 201(b) (permitting a court to take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

■ We believe that, given the wide discretion granted to a court to exclude evidence or testimony, the District Court did not err in its exclusionary rulings. Even had it erred in excluding Campbell's testimony or the reports, those errors were harmless because the jury determined that Doe received a constitutionally acceptable level of care. In order to find CMS or NJDOC liable, Doe was required to show both (i) a de facto policy of the employer and (ii) injury caused by the employees acting pursuant to the policy. See Natale, 318 F.3d at 585. As Doe established no injury under the Eighth Amendment, the exclusion of evidence he proffered to show a CMS or NJDOC policy was not an abuse of discretion.

### B.

■ Doe next challenges several of the District Court's jury charges, specifically the failure to define de facto policy and custom or practice, and the refusal to instruct on several of his legal theories.[4] A district court has considerable discretion in the wording of jury instructions and "need not give [a] proposed instruction if essential points are covered by those that are given." Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 127 (3d Cir. 2003) (quoting Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir.1995)). A trial court "does not abuse its discretion by refusing to emphasize legal inferences favoring one side. Emphasizing arguable inferences to jurors is the job of advocates, not courts." Id. (citing Brewer v. City of Napa, 210 F.3d 1093, 1097 (9th Cir.2000)).

The District Court's explanation of the law on de facto policy and custom or practice in the jury charge covered the essential points and made clear that, as Doe ·

---

4. Doe requested that the Court's charge include his negative theory of liability as to CMS (e.g., that a policy or custom could be shown where a "policy or practice was nominally in place, but was deliberately ignored"), an instruction on actual knowledge and duty to protect on the part of Farrell, and an instruction on gross negligence or a pattern of neglect on the part of Drs. Tagle and Achebe.

argued, those elements could be shown indirectly through CMS's employees. The Court's instructions fairly and adequately covered the issues presented and allowed Doe to argue his theory of the case to the jury. Thus, its refusal to include specific language or instruct on particular legal arguments requested by Doe was not an abuse of discretion.

### C.

■ Doe also challenges the failure of the District Court to conduct a hearing in relation to the testimony of his witness, Elizabeth Fletcher. Doe alleges Fletcher made inconsistent statements at trial as the result of communication with a defense attorney prior to trial. This was not disclosed to Doe, and thus he alleges it violated defendants' obligation to provide discovery under Federal Rule of Civil Procedure 26. At trial, the Court stated that the inconsistent statement alone did not imply improper communication, and Doe never objected, moved to strike, or requested a hearing with regard to the testimony or communication. Because Fletcher was a non-party witness, defense counsel was entitled to speak to her about her anticipated testimony, *see Greiner v. Wells,* 417 F.3d 305, 322 (2d Cir.2005), and the District Court committed no error in not *sua sponte* holding a hearing on her testimony.

### D.

■ The District Court limited the testimony from Doe's expert witness, Dr. Esteban Mezey. It prevented Doe from questioning Dr. Mezey about what dose of HCV medication he would have prescribed for Doe (something not addressed in Dr. Mezey's expert report). This, Doe argues, unfairly prejudiced his case. The problem is that the Court's decision to restrict Dr.

Mezey's testimony to opinions in his report—to prevent unfair surprise to defendants—accorded with Federal Rules of Civil Procedure 26(a)(2)(B)(i) and 37(c)(1); thus it was not an abuse of discretion.

### E.

■ Finally, Doe challenges the District Court's dismissal of his state malpractice claims against CMS, Dr. Tagle, and Dr. Achebe, claiming that he carefully pleaded a cause of action under New Jersey medical malpractice law. The Court implicitly dismissed this claim at the § 1915 hearing when it did not state the claim was viable and could proceed. However, it also did not state that the claim was dismissed, and provided no substantive analysis as to why it lacked merit. If it determined that Doe was bringing a medical negligence claim under § 1983 and thus dismissed the claim as frivolous, we would affirm, as "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference[ ]' " for purposes of an Eighth Amendment claim entitled to remedy under § 1983. *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999).

If, however, the Court construed Doe's cause of action as a state-law claim, it should not have been dismissed as frivolous. Doe complied with New Jersey state law by submitting an Affidavit of Merit from Dr. Mezey, as "the underlying factual allegations of the claim require[d] proof of a deviation from the professional standard of care for that specific profession." *See Couri v. Gardner,* 173 N.J. 328, 801 A.2d 1134, 1141 (2002) (discussing N.J. STAT. ANN. 2A:53A–27). Doe's state-law negligence claim required a lower standard of proof than his federal claim,[5] and arose

5. To prevail on a claim under the Eighth Amendment, a plaintiff must show that defen-

from the same set of facts and against the same defendants as Doe's alleged denial of adequate medical treatment claims violating the Eighth Amendment, which the Court permitted to proceed to trial.

We thus remand the state-law claim for clarification from the District Court. Should it determine that it dismissed Doe's properly pleaded state medical malpractice claim against CMS, Dr. Tagle, or Dr. Achebe, we recommend dismissing that claim without prejudice so that Doe may proceed on it in a state forum.[6]

\* \* \* \* \* \*

For these reasons, we affirm the District Court's pretrial rulings and its denial of Doe's motion for a new trial, but remand the case for clarification on the dismissal of the state-law malpractice claim.

---

dants were deliberately indifferent to a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under New Jersey Law, to establish a *prima facie* case of negligence in a medical malpractice action alleging deviation from the standard of care, "a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." *Teilhaber v. Greene*, 320 N.J.Super. 453, 727 A.2d 518, 524 (N.J.Super.Ct.App.Div.1999) (citations omitted).

6. "[New Jersey] medical malpractice actions are governed by a two-year statute of limitations.... N.J. STAT. ANN. § 2A:14–2. The filing of a federal complaint tolls the running of the statute of limitations on any state law claims asserted in the federal complaint. 28 U.S.C.A. § 1367(d). When a federal court dismisses the state-law claims without prejudice, the tolling continues for an additional period of thirty days. *Ibid.*" *Fearon v. Correctional Medical Services, Inc.*, 2009 WL 395473, at \*2 (N.J.Super.Ct.App.Div. Feb.19, 2009).